Case number 1962-93 United States of America v. Rebecca Stampe. Oral argument not to exceed 15 minutes per side. Ms. Rust, you may proceed for the appellant. May it please the court. I'm Erin Rust, and I'm here on behalf of the appellant, Ms. Rebecca Stampe. I would ask to reserve three minutes for rebuttal. Ms. Stampe found herself in a highly unusual position. The government and her had been working to both investigate and then secure the guilt of a man named Lowden. But the government then unexpectedly reversed course and dismissed the entire case against Lowden, due not to his innocence, but due to the actions of a confidential informant. The district court erred, first, by refusing to review this tainted evidence related to the confidential informant in camera, or by ordering direct production to Ms. Stampe. Second, it erred by denying Ms. Stampe's request to withdraw from a plea agreement to a specific sentence, and thereby foreclosing her ability to advocate herself for a reduction based on her prior cooperation. The district court should have reviewed in camera the tainted evidence. The Supreme Court in Alderman addressed a situation essentially the same as what we have here. Mr. Counsel, what you refer to as the tainted evidence, we don't know what it was, or we don't know that there was any tainted evidence, right? That is, the evidence could have been all the same, but, you know, any number of reasons not to prosecute, right? In general, the government doesn't explain why it doesn't prosecute people, except maybe James Comey at some point. Your Honor, the government has never disputed what Ms. Stampe stated was her understanding as to why the case was dismissed against Loden, and that was on the basis of inappropriate conduct by a confidential informant, and the government has never disputed that. That might not be tainted evidence. It might be that the informant would be incredible if they tried to produce him at trial. I mean, since we simply don't know. Let me go to a different point, though, which is, you made a motion, or counsel made a motion to reject the agreement, but did not argue that at the hearing, and I wonder why not. That is, would not the judge rejecting the agreement have exactly the same effect as her withdrawing the agreement, and the judge would not have been bound by the contract law feeling? And of course, if it was set back to ground zero, the client might have gotten much more time. I mean, there are a lot of good grounds for giving her more than 168 months, are there not? Yes, Your Honor, I think there are many grounds to give her less than 168 months. No, I said more. I said more that is pretty, pretty easily the criminal history might be understated, the amount of meth might have been understated. But I understand the sympathetic argument here, but why wasn't that pressed as a reason to reject the agreement? Your Honor, you can reject this agreement for any good reason. We'd prefer to go back to ground zero. We are disappointed, and you can fix this by simply rejecting the agreement. Well, Your Honor, the trial counsel did argue that in its motion for a variance and at the sentencing hearing. Right. It's in the papers, but then, you know, they just never got into it. They didn't even say, let's look at that. They engaged in this Beshara contract sort of discussion. The government, you know, said no, we want our contract, but simply as a either strategy or, you know, didn't you have another opportunity that you didn't take? Well, Your Honor, I can't speak to the specific strategy decisions that the trial counsel made in the moment. Certainly, the trial judge, Judge Mattice, in this case was focused on whether or not there was a reason for her to withdraw from the plea agreement. And in his papers, the trial counsel did assert other bases for a sentence below the guidelines in this case. And I think that the pre-sentence report also discloses numerous bases for a sentence below the guidelines, including the prior efforts of Ms. Stampy in working with law enforcement, local law enforcement, to secure a plea agreement. Ms. Stampy had her search warrant against Mr. Lowden. Her name was in that, which means that her identity was disclosed to Lowden, putting her at risk. And the direct results of that warrant were the federal charges in this case. And as the government did say in its papers, Lowden was not dismissed because he was innocent. He was dismissed because of other reasons. And the government never disputed that those reasons had to do with the inappropriate actions of confidential informant. And I think all the... And it just doesn't bear on Ms. Stampy. And, you know, I can imagine, I can certainly understand from your position, not really caring for that authority. But, you know, one explanation for it is it's a pretty serious slippery slope when we start saying we're going to automatically or somehow abuse of discretion, not trust that. That seems a little worrisome to me. And it is a discretionary choice. District Court doesn't have to accept it. As you know, it could have done in camera. But what do I do with that authority? And how do I keep it intact and rule for you? Your Honor, the government and the district court below emphasized multiple times the highly unusual nature of this particular case. And what makes that highly unusual is the fact that the government dismissed the case against her co-defendants, which the government rarely does, almost never does. That fact alone, which was highlighted in the Alderman case, the Supreme Court case, once tainted evidence comes to light, once there is a specific request for known problematic evidence, that changes... Prosecutorial discretion is, you know, it's like a foundational part of liberty that, you know, it's one of many checks that we have in the system. And it really is beyond review for the most part, barring something utterly outrageous. And your premise is that it's unusual to drop a charge. And my reaction is to say, wait, we shouldn't be punishing the government for dropping charges. Like that's a healthy thing in a criminal system. Your Honor, we take no position against, no problem with the fact that the government dismissed charges against Lowden. We're not questioning the government's authority or whether or not it had legitimate basis to make that decision. What we're questioning is the district court's determination that it had no basis to do an in-camera inspection of this known evidence. I don't think the district court judge thought he had no basis. I just didn't think, I think he decided to trust the AUSA. Which is exactly what the Supreme Court and Alderman said is not sufficient when we know that there is questionable evidence related to one co-defendant in a trial. So the specific circumstances here, which are very rare, as the government and the district court below repeatedly acknowledge, set Ms. Stampy's case apart. It does not create a... Just one other question on this line. Just, you know, one risk of deferring to the AUSA is they're human beings, they shade, they bend the truth or God forbid outright lie. That's, for me, that doesn't seem like a big risk. And I guess the reason I say that is the conversation starts with the AUSA explaining what's happened. The AUSA then says this is not Brady material or Jigmeo material. At the time they say that, they have no idea what the district court's going to do. And the district court clearly does have authority to do an in-camera review. And that's the end of the AUSA's job if they've just lied, right? I mean, the district court now does the in-camera review and realize that was just a bald-faced lie by the AUSA when they said it was not Brady material. Your Honor, Brady applies to good faith mistakes made by the United States government or prosecuting attorney as well as intentional mistakes. So the review is not to indicate that the United States attorney in this case flatly lied. The requirement for the review... I mean, that's not a very flattering thing for an AUSA that works very frequently with the district court. Your Honor, attorneys get things wrong just as judges get things wrong sometimes. It doesn't mean that the attorney acted in bad faith. And our request to review this highly sensitive material that led to the dismissal of the identical charges that my client was facing, it makes sense. It is appropriate under the rules of evidence and under the Supreme Court's Alderman case for the district court to take a second look at that. It doesn't mean individuals can violate Brady unintentionally. An alderman says that in this unique circumstance, the court should execute in-camera review or direct production, which is actually what aldermen required. The other issue is that the district court improperly moved the burden here. So the burden under the rules is on the government or the party that is trying to withhold evidence. They must present good cause or good reason to withhold that evidence. Once a determination of materiality... I'm sorry, are you making a Rule 16 argument or is this a Brady... are they the same? What's your position on what you have to show to get information? I see my time's out if I might briefly... Yeah, go ahead. Under both Brady and Rule 16, once there is a substantial basis of materiality, and in this case, we have that basis of materiality, which is what the Supreme Court said in alderman. We know that there's this questionable evidence out there. So once the threshold of materiality is made, the individual who is attempting to withhold it under Rule 16 must make good cause, show good cause as to why they want to withhold that evidence. And the district court, instead of looking to the government to present good cause for why this material evidence shouldn't be disclosed, put on to Ms. Stampy the burden of producing compelling evidence that the government was acting improperly. And again, Brady doesn't require the government to act improperly. Ms. Stampy could have just... was not required to do a substantial showing or a showing that the government acted improperly under Brady. All right, thank you. You'll get your full rebuttal, Ms. Rustin. Mr. Woods, let's hear what you have to say. Thank you, Your Honor. My name is Jay Woods. May it please the court, I represent the United States. The district court reasonably rejected Ms. Stampy's efforts to compel disclosure of evidence about our decision to dismiss a conspiracy charge against her co-defendant. The court, the district court also reasonably rejected Ms. Stampy's motion to withdraw from her plea agreement. And if I may... Is this your case from the get-go? No, sir, it was not. I adopted this case after Ms. Stampy had entered into her plea agreement. I see. What's your reaction to the... Why is it so harmful? I mean, I for one could understand being in Ms. Stampy's position and saying, well, this is strange. One, I'm utterly curious what happened. But if the confidential informant may have had some bearing in their investigation of me, it takes a leg out from under the table of an explanation for the agreement, right? Now she can't do any cooperation, which might lower the sentence. What's the downside with you're just saying, you know, I'm judgmentized probably just as well for everybody that you at least look at it yourself. And so it's not just the AUSAs. I mean, you really can't understand why that would provide double assurance to the criminal defendant about to spend 168 months in jail that there was no other way around this. Well, sure, it's understandable from Ms. Stampy's perspective that she would be curious about what happened. However, the law places the burden on the United States to determine first whether there is any materiality in the confidential informant's misconduct. And the district court inquired about that. He did not shift the burden to the defendant. He inquired of the United States about the materiality of this evidence. And once he had satisfactorily assured himself that the United States had reviewed the materiality of this evidence and determined that there wasn't any materiality from Ms. Stampy, he was comfortable in proceeding with not requiring an in-camera review. Would there have been any harm? What about Ms. Rust's point that, you know, materiality isn't exactly black and white? I mean, we have lots of Sixth Circuit decisions where panels are struggling with whether something's material and even an AUSA in complete good faith could make a mistake about that. Yes, sir, that is true. An AUSA could make a mistake about materiality. However, we have a significant amount of guidance here. We meaning, I'm sorry, the United States in this case. First and foremost, we have the case law that defines materiality for us. But then again, there's also the Department of Justice policy that provides a broader definition of what is material in this certain situation. And then after that, we have training that begins from the very first day that we come on board as prosecutors, where we are trained in what is material, what is Brady. We have supervisory chain of command that reviews these decisions. Is there a difference between what's material under Rule 16 and what's material under Brady? I mean, the cases seem confusing to me. Under Rule 16, it seems like they just, in some courts at least, they just have to show that it could be helpful to their case. I mean, it's not the civil discovery rule, which is very liberal, but it's something less than it would definitely show that I'm not guilty. But it's just something like, OK, this would be helpful to the defense. Is that right? It has to, under the law, it has to, the materiality analysis has to be more than that. It has to be something that would change the outcome that would, had it been disclosed. But how do I know that if I don't know exactly what it is? I mean, I understand the Bagley standard, if it's a post hoc Brady analysis and it's after trial, and I know what the evidence is and I know what the evidence was at trial. So I have to basically ask that there was a reasonable probability the outcome would be different. But what's the ex ante materiality requirement? It is whether the evidence is inconsistent with any element of the offense. And if that evidence is inconsistent with any element of the defense, then it is material. Then it is material. Sorry. Doesn't Brady, though, also talk about relevant to guilt or punishment, which is a little different than defense, isn't it? I'm not saying which way that cuts, but isn't that another difference between the two? It is indeed material evidence, especially in this case, that could, it could have been material to punishment. But as I might have, as I started, Miss Stampy's quantum of proof was starkly different. In this case, she had admitted to distributing 15 kilograms of methamphetamine in the year in 2017. She had multiple guns in her residence. And I've read all that. Let me let me take you to the question that I asked your adversary as well, which is. You know, I read the transcript, you were there. I guess I was puzzled by not making an argument for rejecting the agreement. That is, you stood, you stood on contract law. And that was what Judge Mattice was asking about. But Miss Stampy has a certain sympathetic argument here. And had she made the argument for just rejecting the agreement, would you have opposed that on the same kind of grounds that, well, we got a good deal and tough luck? Or would you have said, have at it, we'll, we'll hit you even harder? Well, I do agree with Judge Sutton. There are a number of items in, I believe it was Judge Sutton. I'm sorry, I believe I agree with the court. There are a number of items in Miss Stampy's PSR that could have led to an above bottom of the guideline sentence. She has prior prescription fraud, drug related offenses. She has multiple. Yes, sir. But had she moved? She did move. She just didn't argue it. Three minutes and she didn't argue. I take it when I, I think your opposition doesn't really address the rejecting the argument, rejecting the agreement point. She moved to withdraw from her plea agreement. If she had asked to reject the agreement. Okay, that motion says that for variants or reject the agreement. Then there are grounds and the judge would have been entitled to do right. And this is a could have considered. This is an 11 C1 C agreement. Yes, sir. And the district court does have the option of rejecting the plea agreement where the defendant makes the timely request that he reject the plea agreement. And that is before he accepts it. If he's accepted the plea agreement. And if I remember correctly, that's how the proceedings began. But I'd have to check. I don't want to maybe just what's your answer to judge box question. Maybe it's slightly counterfactual, but. They start with the idea of reject the plea agreement. This doesn't make any sense anymore. Is it why wouldn't the government said, yeah, go for it. We have a lot of evidence. And if you want to take your chances, that's fine. But there's some serious, serious jeopardy here. Sure. The quantum of proof, though, against mistake. He had not changed. She was still facing significant evidence of her drug distribution. And what I was trying to get to the point. The point is, it's been a higher sentence. Well, we simply, I don't know. It could have been a higher sentence. We were comfortable at that moment to take the bottom of the guideline range. But yes, it could have been a higher sentence. And had the court not yet. Accepted the plea agreement. And as I noted a minute ago, I don't have an independent recollection of the habit. I can certainly check on that for the court. But once it accepted the plea agreement. It becomes a matter of withdrawing and not rejecting. So the, the, the proof against Mr. Loden was not near the quantum of proof against the stamp. And that. To a certain degree. Colors, the materiality analysis that. The fact that Miss Stampy was in custody. At the time of the confidential informants misconduct. So. Looking at the material out materiality aspect. Which is the burden of the United States. We determined that materiality did not warrant disclosure of the confidential informants misconduct. Hearing no more questions from the court. I would simply ask that as the court has already noted, the Hernandez case. Does answer many of the questions here in this case. I'm curious about Hernandez. Because it says that you need to look for. Prosecutorial misconduct. And I don't. Where does that come from? Hernandez doesn't seem to cite anything for that. I'm just. Does it come from a Supreme court case? I mean, Mr. Woods, it's not going to help you to look at it. There's nothing. There are no citations in the paragraph. Judging Albanians referring to. So. Yeah. Well, I was just. Forget it. You didn't forget anything. But, but judge Albanians points a good one. Are you aware of where that idea comes from? I mean, you can. You can kind of see the intuition either way, but. Where does it come from that you trust the prosecutor? Unless there's evidence of prosecutorial misconduct. Where does that come from? Well, it comes from, as the court noted earlier, the justice system is. Based on a faith in a trust in the United States. That it will correctly and well apply its discretion in making these decisions. Where. The United States, United States indeed. Makes a decision within its discretion as it did here. The court. Follows that decision. Trust that decision. And only where there is a showing of misconduct. Does the court. Coming behind the United States assessment of materiality. Well, you know, I suppose another answer is. They still have the in-camera review option. And it's not as if in camera requires a showing of. Misconduct that that discretion was there, but. You can always abuse discretion. So that takes you back to. Probably miss Russ key argument. Yes, sir. But for the court now to find that. The district court should have. Conducted an in-camera review. It would have to find an abuse of discretion. It would have to second guess the judicial integrity of the district court's decision. Not to hold an in-camera review. And respectfully, that's not the appropriate decision in this case. Okay. Thank you, Mr. Woods. We'll hear. Russ, you've got your rebuttal. Your honor. In prior cases where in my office, where a defendant has filed a motion asking the district court to reject the plea agreement. We have had circumstances where the United States attorney filed a response, agreeing to the rejection of that plea agreement. And in this case, that opportunity was provided to the United States. And instead of agreeing to reject the plea agreement, the government pushed back and argued. And in this case, the government pushed back and argued the bar sheriff actors and argued contract. Did that happen at the outset of the hearing? That was in the briefs. That were filed. The response. Excuse me, the motion for variance and then the government's response to that motion for variance. The motion for variance asked for a variance or for the district judge to reject the plea agreement. And in response, instead of agreeing to just a rejection of the plea agreement, the government. You know, I hear you on that point. Maybe the better way to put it is at the beginning of the hearing did either you or. Another lawyer say the government really hasn't engaged us on whether to reject. And we really think the court should reject and that that's the first order of business. And then the second order of business,  And then the third order of business. Well, I think that it was. Clear that that was part of what was being asked at the judge had the authority to reject it. Just based on the rule 11 C one C in addition to based on contract rules. But the. The reason that the district court rejected the plea agreement was because. By arguing. That there was a reasonable basis, a just. And fair basis for miss Stampy to be allowed to withdraw from the plea agreement. Those same reasons support the district court rejecting the plea agreement. So. While the trial attorney may not have specifically used the word, please reject the plea agreement. All of the reasons apply to both possibilities. And certainly it was in the papers and therefore the, the attorney did not wave or a forfeit. His ability to ask for that or this court's ability to consider that on appeal. Your honor. The Hernandez case is. The way you put that, you know, of any case where an appellate court. Has a. Sue a sponty told the district judge that he should have rejected a plea agreement and forced him to reject it. Not an agreement. Yeah. Plea agreement. Your honor, this court can reduce. Can find an abuse of discretion for any number of reasons. I've just said no of any, you know, of any case. Off the top of my head. I did not know of any cases. I'm not aware of any. I'm not aware of any cases. We can look. It doesn't mean that there aren't any out there. I'm just not. Aware of any. At the moment. The Hernandez case. Is not binding on the certain, on the specific circumstances here. I see my time's out. If I may. Yeah. Yeah. You know, finish it up and give you a chance to respond to judge. No bandians point. You know, where does. You know, Hernandez doesn't cite something for the proposition that has to be an existing showing of prosecutorial misconduct. Is Hernandez out there or is there some case that shows it's not. Properly characterizing the law. Your honor, the Hernandez conclusion on that point. Has already been criticized by this court. In the Carmichael case. But in addition, Hernandez. Doesn't tackle the Supreme court's holding an alderman, which says that when there is an indication that there's some sort of questionable evidence involved. That we cannot just. In Alderman. The evidence was, I mean, it violated the fourth amendment. Right. I mean, there's no question that it was bad evidence. Like it was. It was almost like suborning perjury or whatever it would be. I mean, that's not this case. Is it. Well, it is. It's very similar to this case, your honor. In that. It, whatever this evidence was, it was bad enough. That it does. Rise to the same level as the Hernandez, excuse me, as the Alderman case. And your honor, we don't know what it is because the. The district court refused to review that evidence in camera. Now we're now we're treading ground. We've covered. But, but really appreciate. Both of your helpful briefs and arguments. It's a tricky case. We're going to try to find our way through it, but I'm really grateful as always for your answering our questions and for your helpful briefs. Thank you. Thank you. And the case will be submitted.